**FILED**

UNITED STATES DISTRICT COURT

FOR THE WESTREN DISTRICT OF TEXAS

AUSTIN DIVISION

JUL 1 9 2021

CLERK U.S. DISTRICT CLERK
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY

| | |
|---|---|
| **LORILEE MERANDA ROBINSON,**<br><br>Plaintiff,<br><br>vs<br><br>**NATIONWIDE RECOVERY SYSTEMS, LTD.,**<br><br>Defendant | **Jury Trial Demanded**<br><br>1:21CV0642 LY |

Plaintiff LORILEE MERANDA ROBINSON (hereinafter referred to as "Plaintiff"), alleges on personal knowledge, and on information and belief as follows:

### NATURE OF ACTION

1.       Plaintiff brings this action for damages, and other legal and equitable remedies, resulting from the illegal actions of Defendant in negligently, knowingly and/or willfully placing telephone calls to Plaintiff's cellular telephones without her prior express written consent within the meaning of the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq. (hereinafter referred to as the "TCPA").

2.       Defendant has violated the TCPA by contacting Plaintiff's cellular telephones via an "automatic telephone dialing system," as defined by 47 U.S.C. § 227(a)(1), without their prior express consent within the meaning of the TCPA.

3.       This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. (the "FDCPA").

4.       Plaintiff brings this action for actual damages, injunctive relief and statutory damages resulting from Defendant's illegal actions.

## JURISDICTION AND VENUE

5.      The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 28 U.S.C. § 1331; 47 U.S.C. § 227; *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 753 (2012) (holding that federal courts have federal question jurisdiction over TCPA claims.).

6.      This Court has personal jurisdiction over Defendant because the conduct at issue occurred in or was directed toward plaintiff in Western District Austin Division Texas. Plaintiff received automated telephone calls to her cellular telephone from Defendant without her consent for such calls. Defendant made automated telephone calls to cellular telephones of plaintiff. Defendant has established minimum contacts showing it has purposefully availed itself to the resources and protection of the State of Wisconsin. Defendant does substantial business in Wisconsin.

7.      Venue is proper in the United States District Court for the Western District of Austin pursuant to 28 U.S.C. §§ 1391(b)-(c) and 1441(a), because a substantial part of the events giving rise to the claims, namely automated telephone calls to persons in this District and debt collection activities, occurred in this District.

## PARTIES

8.      Plaintiff LORILEE MERANDA ROBINSON ("LORILEE MERANDA ROBINSON") is an individual citizen of the State of Texas, who resides in Western District Austin Division, Texas.

9.      Plaintiff is a "customer" as defined in the Texas Consumer Act, TX. Stat. § 421.301(17), in that she engaged in consumer credit transactions. Tx. Stat. § 421.301(10).

10.     Defendant Nationwide Recovery Systems, Ltd. ("NRS") is a debt collection agency with its primary place of business at 2304 Tarpley Road, Suite 134, Carrollton, Texas 75006.

11.     NRS is engaged in the business of collecting debts owed to it and others that were incurred for personal, family or household purposes.

12.     The alleged debt that NRS was attempting to collect from Plaintiff arose from alleged debts incurred for personal, family or household purposes. All of Plaintiff's alleged debts are consumer debts. Plaintiff does not have any business debts.

2

## THE TELEPHONE CONSUMER PROTECTION ACT OF 1991
## (TCPA), 47 U.S.C. § 227

13.     In 1991, Congress enacted the TCPA, in response to a growing number of consumer complaints regarding certain telemarketing practices.

14.     The TCPA regulates, among other things, the use of automated telephone equipment, or "auto dialers." Specifically, the plain language of section 227(b)(1)(A)(iii) prohibits the use of auto dialers to make any call, including sending a text message, to a wireless number in the absence of an emergency or the prior express written consent of the called party.

15.     According to findings by the FCC, the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls and texts whether they pay in advance or after the minutes are used.

16.     The FCC has ruled that the word "call" in the TCPA includes both voice calls and text calls, and applies whether the text messages were sent by regular telephone transmission or over the internet to a wireless device. "TCPA Omnibus Declaratory Ruling and Order," FCC 15-72 at 56-62 (July 10, 2015), (available at "https://www.fcc.gov/document/tcpa-omnibus-declaratory-ruling-and-order.") (Reaffirming the FCC's 2003 ruling that text messages are "calls" under the TCPA and further ruling that text messages sent "internet to phone" and by other sources are also "calls.")

17.     The TCPA "generally prohibits autodialed calls to wireless phones," but "provides an exception for autodialed and prerecorded message calls ... made with the prior express consent of the called party." *Balschmiter v. TD Auto Fin. LLC*, 303 F.R.D. 508, 512 (E.D. Wis. 2014) citing *In Re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 F.C.C. Rcd. 559 ¶ 9 (Jan. 4, 2008); 47 U.S.C. § 227(b)(1)(A)(iii).

18.     On February 15, 2012, the FCC released a Declaratory Ruling wherein it clarified that a party must obtain ***prior express written consent*** from the recipient prior to making automated calls to the recipient's cellular telephone. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991* ("2012 FCC Declaratory Ruling"), 27 F.C.C.R. 1830, 27 FCC Rcd. 1830, 55 Communications Reg. (P&F) 356, 2012 WL

3

507959 (Feb, 15, 2012), at ¶ 2.

19.    The FCC recently updated its rules on consent, requiring "prior express written consent" for calls or SMS text messages that contain an "advertisement" or "telemarketing." *See* 47 C.F.R. § 64.1200(f)(8).

20.    In the same omnibus order, the FCC clarified "that a called party may revoke consent at any time and through any reasonable means. A caller may not limit the manner in which revocation may occur." TCPA Omnibus Declaratory Ruling and Order," FCC 15-72 at 29-30.

21.    The Court is bound by all of the FCC's final orders relating to the TCPA. *Balschmiter v. TD Auto Fin. LLC*, 303 F.R.D. 508, footnote 4 (E.D. Wis. 2014) citing *CE Design, Ltd. v. Prism Bus. Media, Inc.*, 606 F.3d 443, 446 (7th Cir. 2010) (holding that under the Hobbs Act, the FCC's TCPA orders are binding); *Media, Inc.*, 606 F.3d 443, 446 (7th Cir. 2010) (holding that under the Hobbs Act, the FCC's TCPA orders are binding).

22.    The TCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Mey v. Got Warranty, Inc.*, No. 5:15-CV-101, 2016 U.S. Dist. LEXIS 84972 *6 (N.D.W. Va. June 30, 2016) ("merely asserting a 'bare procedural violation, divorced from any concrete harm,' will not satisfy the concreteness requirement. This observation has little application to claims under the TCPA, since those claims are not based on 'bare procedural' rights, but rather on substantive prohibitions of actions directed toward specific consumers."). (Internal citations omitted).

## THE FAIR DEBT COLLECTION PRACTICES ACT

23.    The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Derosia v. Credit Corp Solutions*, 2018 U.S. Dist. LEXIS 50016, at *12 (E.D. Wis. Mar. 27, 2018) ("'a plaintiff who receives misinformation form a debt collector has suffered the type of injury the FDCPA was intended to protect against' and 'satisfies the concrete injury in fact requirement of Article III.'") (quoting *Pogorzelski v. Patenaude & Felix APC*, 2017 U.S. Dist. LEXIS 89678, 2017 WL 2539782, at *3 (E.D. Wis. June 12, 2017)); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character,

amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Lorang v. Ditech Fin. LLC*, 2017 U.S. Dist. LEXIS 169286, at *6 (W.D. Wis. Oct. 13, 2017) ("the weight of authority in this circuit is that a misrepresentation about a debt is a sufficient injury for standing because a primary purpose of the FDCPA is to protect consumers from receiving false and misleading information."); *Neeley v. Portfolio Recovery Assocs., LLC*, 268 F. Supp. 3d 978, 982 (S.D. Ind. Aug. 2, 2017) ("[N]othing in *Spokeo* overruled the Seventh Circuit's decisions that emphasized and affirmed the power of Congress to pass legislation creating new rights, which if violated, would confer standing under Article III.") (Alteration in original) (quoting *Saenz v. Buckeye Check Cashing*, 2016 U.S. Dist. LEXIS 127784, at *5 (N.D. Ill. Sep. 20, 2016); *Qualls v. T-H Prof'l & Med. Collections, Ltd.*, 2017 U.S. Dist. LEXIS 113037, at *8 (C.D. Ill. July 20, 2017) ("Courts in this Circuit, both before and after *Spokeo*, have rejected similar challenges to standing in FDCPA cases.") (citing "*Hayes v. Convergent Healthcare Recoveries, Inc.*, 2016 U.S. Dist. LEXIS 139743 (C.D. Ill. 2016)); *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through section 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,"); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k (a).

24.     Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

25.     Misrepresentations of the character, amount or legal status of any debt, injure or risk injury to interests expressly protected by Congress in the FDCPA. *See Degroot v. Client*

*Servs.*, 2020 U.S. Dist. LEXIS 6677 (E.D. Wis. Jan. 15, 2020); *Oloko v. Receivable Recovery Servs.*, 2019 U.S. Dist. LEXIS 140164 (N.D. Ill. Aug. 19, 2019); *Untershine v. Encore Receivable Mgmt., Inc.*, 18-cv-1484 (E.D. Wis. August 9, 2019); *Richardson v. Diversified Consultants*, No. 17-cv-4047, 2019 U.S. Dist. LEXIS 118786 *10-11 (N.D. Ill. July 17, 2019) ("the receipt of a communication misrepresenting the character of the debt (here, the amount owed) is the kind of injury that Congress sought to prevent through the FDCPA. 'Such an injury falls squarely within the ambit of what Congress gave consumers in the FDCPA: 'a legally protected interests in certain information about debts,' with 'deprivation of information about one's debt (in a communication directed to the plaintiff consumer) a cognizable injury.'" (internal citations omitted); *see also Pierre v. Midland Credit Mgmt., Inc.*, 2017 WL 1427070, at *4 (N.D. Ill. Apr. 21, 2017); *Saenz v. Buckeye Check Cashing of Illinois*, 2016 WL 5080747, at

*1-2 (N.D. Ill. Sept. 20, 2016); *Bernal v. NRA Grp., LLC*, 318 F.R.D. 64, 72 (N.D. Ill. 2016) (holding that Plaintiff had standing to challenge misleading communication sent to him because the communication violated his "right to be free from such misleading communications"). Such misrepresentations may cause consumers to make incorrect decisions about their finances or make payments to incorrect parties.

## FACTUAL ALLEGATIONS

26.    At all times relevant, LORILEE MERANDA ROBINSON is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

27.    LORILEE MERANDA ROBINSON never provided her cellular telephone number to NRS.

28.    After LORILEE MERANDA ROBINSON was unable to make payments on her accounts, NRS began calling MERANDA ROBINSON's cellular telephone.

29.    NRS placed a telephone call to LORILEE MERANDA ROBINSON's cellular telephone in February 2020.

30.    On each call, NRS left a prerecorded message requesting LORILEE MERANDA ROBINSON contact NRS by telephone.

31.    The call history on LORILEE MERANDA ROBINSON's cellular phone indicates the call listed above was made from the number "(903) 206-4775." This telephone number belongs to NRS.

32.    NRS is, and at all times mentioned herein was, a "person," as defined by 47

U.S.C. § 153(39) ("The term 'person' includes an individual, partnership, association, joint-stock company, trust, or corporation.")

33.     All telephone contact by NRS to LORILEE MERANDA ROBINSON on her cellular telephone occurred via an "automatic telephone dialing system," as defined by 47 U.S.C. § 227(a)(1).

34.     The telephone number that NRS used to contact LORILEE MERANDA ROBINSON, made by an "automatic telephone dialing system," was assigned to a cellular telephone service as specified in 47 U.S.C. § 227(b)(1)(A)(iii).

35.   LORILEE MERANDA ROBINSON never provided "prior express consent" to NRS or anyone else to place telephone calls or text messages to LORILEE MERANDA ROBINSON's cellular phone utilizing an "artificial or prerecorded voice" within the meaning of 47 U.S.C. § 227(b)(1)(A).

36.     NRS's telephone call to LORILEE MERANDA ROBINSON's cellular phone was not "for emergency purposes" as described in 47 U.S.C. § 227(b)(1)(A).

37.     NRS's telephone call, placed to LORILEE MERANDA ROBINSON's cellular phone utilizing a "prerecorded voice" for non-emergency purposes and in the absence of LORILEE MERANDA ROBINSON's prior express consent, violated 47 U.S.C. § 227(b)(1)(A).

38.     Under the TCPA, the burden is on Defendants to demonstrate that NRS currently had prior express consent within the meaning of the statute.

39.     The Seventh Circuit has held that the "'called party' in § 227(b)(1) means the person subscribing to the called number at the time the call is made." *Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 643 (7th Cir. 2012); *see also Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1251-52 (11th Cir. 2014) ("called party" means the current subscriber and not the prior subscriber or intended recipient for purposes of the TCPA).

40.     Plaintiff has never received a written communication from NRS.

41.     Plaintiff did not receive a written communication from NRS within five days of receiving the telephone call described above.

42.     Upon information and belief, NRS did not send Plaintiff a written communication regarding the debt that NRS had attempted to collect in the earlier phone call.

43.     The FDCPA requires:

(a) Notice of debt; contents Within five days after the initial communication with a consumer in

connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—

(1) the amount of the debt;

(2) the name of the creditor to whom the debt is owed;

(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

44.     NRS failed to provide the validation notice within five days of the initial telephone call in July 2021.

## COUNT I

## KNOWING AND/OR WILLFUL VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227 *ET SEQ.*

45.     LORILEE MERANDA ROBINSON incorporates by reference the foregoing paragraphs of this Complaint as if fully stated herein.

46.     The foregoing acts and omissions of NRS constitute a knowing and/or willful violation of the TCPA, including but not limited to each of the above-cited provisions of 47 U.S.C. § 227 *et seq.*

47.     As a result of NRS' knowing and/or willful violation of 47 U.S.C. § 227 *et seq.*, MERANDA ROBINSON and each member of the Class are entitled to treble damages of up to $1,500.00 for each and every call in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3).

## COUNT II

## VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT 47 U.S.C. § 227 *ET SEQ.*

48.    LORILEE MERANDA ROBINSON incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

*49.*    The foregoing acts and omissions of NRS constitute a violation of the TCPA, including but not limited to each of the above cited provisions of 47 U.S.C. § 227 *et seq.*

50.    As a result of NRS' violation of 47 U.S.C. § 227 *et seq.*, LORILEE MERANDA ROBINSON is entitled to an award of $500.00 in statutory damages for each and every call in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

51.    LORILEE MERANDA ROBINSON and is also entitled to and does seek injunctive relief prohibiting NRS' violation of the TCPA in the future.

## COUNT III – FDCPA

52.    LORILEE MERANDA ROBINSON incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

53.    NRS failed to send the validation notice to Plaintiff within five days of NRS's initial telephone contact with Plaintiff.

54.    Defendant violated 15 U.S.C. § 1692g (a) and 1692g (b).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court grant Plaintiff relief against Defendant:

A.      Injunctive relief prohibiting such violations of the TCPA and FDCPA by Defendant in the future;

B.      As a result of Defendant's violations of 47 U.S.C. § 227(b)(1), Plaintiff LORILEE MERANDA ROBINSON seeks $500.00 in statutory damages for each and every call that violated the TCPA;

C.      As a result of Defendant's violations of 15 U.S.C. § 1692g, an award of statutory damages of $1,000.

D.      Cost;

E.      And a reasonable Attorney fee

**Dated: 07-16-2021**

**s/ LORILEE MERANDA ROBINSON**

**(PLAINTIFF)**

**(512) 679-9127**

**3000 Kramer Ln APT 1340**

**Austin Tx 78758**

12